UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JOHNNY LEE EVANS and
DORIS J. EVANS, Debtors

CASE NO. 04-13973

OPINION

On consideration before the court is the Chapter 13 trustee's motion for an order declaring the §1322(b)(5) claim of Mid-State Homes current and all defaults cured; a response to said motion having been filed by Mid-State Homes; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), and (O).

II.

As a part of a building contract, the debtors, Johnny Lee Evans and Doris J. Evans, executed a promissory note and deed of trust on February 5, 2000, in favor of Jim Walter Homes, Inc., which was secured by their residential real property. The promissory note and deed of trust were assigned by Jim Walter Homes, Inc., to Mid-State Homes, which was designated in the proof of claim filed in this bankruptcy case as a secured creditor.

The debtors filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code on June 30, 2004. Their Chapter 13 plan was confirmed by an order of this court on November 19, 2004. According to the Chapter 13 trustee's Final Report and Account, the

debtors paid the debt owed to Mid-State Homes through their plan in conformity with the amounts set forth on the aforementioned proof of claim.

After the debtors' plan was confirmed, Mid-State Homes acquired hazard insurance through an affiliated entity, Best Insurors, Inc., covering the debtors' property and assessed their account for the premiums related to this coverage as follows:

| | | |
|---|---|---|
| 1. | Period of February 28, 2005 - 2006 | $ 733.00 |
| 2. | Period of February 28, 2006 - 2007 | 719.00 |
| 3. | Period of February 28, 2007 - 2008 | 710.00 |
| 4. | Period of February 28, 2008 - 2009 | 1,021.00 |
| | Total insurance premiums | $3,183.00 |

During the time that the bankruptcy case was pending, Best Insurors, Inc., notified the debtors each year that the insurance was being acquired, as well as, notified the debtors' bankruptcy attorney concerning this coverage on two separate occasions. However, neither Best Insurors, Inc., or Mid-State Homes ever notified the Chapter 13 trustee or the court of the premium charges and never petitioned the court pursuant to Rule 2016(a), Federal Rules of Bankruptcy Procedure, to have the charges approved. The proof of claim was also never amended to reflect these additional expenses.

On February 11, 2009, the Chapter 13 trustee, Locke D. Barkley, filed a motion styled "Trustee's Motion for an Order Declaring 1322(b)(5) Claim of Mid-State Homes Current and Defaults Cured," (the "§1322(b)(5) motion"). This motion was noticed to Mid-State Homes and its attorney on the same date. In its response to the motion, Mid-State Homes asserted a claim for the total amount of the hazard insurance premiums in the sum of $3,183.00, and requested

that this amount be paid within 30 days or that it be allowed to proceed with the foreclosure of its deed of trust.

The issue before the court is whether the failure of Mid-State Homes to comply with the provisions of Rule 2016(a), Federal Rules of Bankruptcy Procedure, mandates the disallowance of its claim for the hazard insurance premiums which it asserted for the first time in its response to the trustee's §1322(b)(5) motion.

III.

Rule 2016(a), Federal Rules of Bankruptcy Procedures (hereinafter Rule 2016(a)), states in pertinent part as follows:

> **(a) APPLICATION FOR COMPENSATION OR REIMBURSEMENT**
>
> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for the services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared or whether an agreement or understanding exists between the applicant or any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required...

The court is certainly aware that the text of Rule 2016(a) contains the requirement that the creditor must be seeking compensation or reimbursement of necessary expenses "from the estate." In this judicial district, the Chapter 13 confirmation order provides that property of the estate is not revested at confirmation in the debtors. Consequently, the automatic stay is not lifted by operation of law until the plan is completed or until some other "triggering" event

occurs. Likewise, the bankruptcy estate and property of the estate remain intact. As such, this court concludes that a post-confirmation, pre-discharge assessment of hazard insurance premiums is an effort to seek compensation or reimbursement of expenses from the bankruptcy estate.

Rule 2016(a) covers reimbursable expenses sought after an estate comes into being and for so long as it remains in existence. *In re Padilla*, 379 B.R. 643, 657 (Bankr. S.D. Tex. 2007). Rule 2016(a) requires that creditors receive approval for their reimbursable expenses. *Id.* "The court cannot administer an estate in a just, speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a) application for Reimbursable Expenses that creditors seek to collect post-confirmation. Without Rule 2016(a) applications, the Court can not ensure compliance with §1327(a), protect a debtor's rights under 1322(b)(5), or protect a debtor's right to a "**fresh start**" after completing a chapter 13 plan." *Padilla*, at 659. (Emphasis added.) "[A] creditor's failure to file an application for postpetition fees under Rule 2016(a) means that, as a matter of law, any such postpetition fees are per se unreasonable." *In re Hence*, 2007 WL 4333834, at *8 (Bankr. S.D. Tex. 2007), *citing In re Jones*, 366 B.R. 584, 594-95 (Bankr. E.D. La. 2007).

In this case, Mid-State Homes did not comply with either the letter or the spirit of Rule 2016(a) in regard to the hazard insurance premiums. It is not a difficult task to file a Rule 2016(a) application notifying the court and the interested parties that fees or costs are being requested.

4

The debtors, however, are not completely blameless. Both the deed of trust and Exhibit "C" to the building contract which they obviously executed contain provisions that contemplate "forceplacing" hazard insurance coverage should the debtors fail to acquire coverage on their own behalf. The debtors and their bankruptcy attorney were noticed on multiple occasions that insurance was being acquired through Best Insurors, Inc. The debtors obviously acquiesced in this conduct because they perhaps were unable to afford the insurance themselves. Consequently, the court is being asked to judicially weigh the effect of Mid-State Homes' failure to comply with Rule 2016(a) against the debtors' tacit acquiescence of Mid-State Homes' acquiring the hazard insurance coverage through its affiliate, Best Insurors, Inc., which was expressly contemplated in the contract documentation.

Having considered this issue from the perspective of both parties, the court concludes that an equitable solution would result if the debtors were required to repay Mid-State Homes the total amount of the insurance premiums in the sum of $3,183.00 over a period of five years at a market rate of interest of 6% per annum. This should be payable in equal monthly installments added to the current regular monthly installments that are due under the terms of the promissory note originally executed in favor of Jim Walter Homes, Inc.

A separate order will be entered consistent with this opinion.

This the 26th day of October, 2009.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE